NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| Linda S. SKELCY,<br><br>    Plaintiff,<br><br>v.<br><br>UNITEDHEALTH GROUP, INC.; OXFORD HEALTH INSURANCE, INC.; DENISE BEIGHE, M.D., individually and as an employee/agent of Medical Evaluations Specialists, Inc.; MEDICAL EVALUATION SPECIALISTS, INC.; DENNIS SANDOVAL, M.D., individually and as an employee/agent of UnitedHealth Group; and GAIL WILDER, M.D., individually and as an employee/agent of UnitedHealth Group,<br><br>    Defendants. | Civ. No. 12-01014<br><br>OPINION |

THOMPSON, U.S.D.J.

   This matter comes before the Court on two motions to dismiss and a cross-motion to amend.  Defendants Medical Evaluation Specialists, Inc. ("MES") and Denise Beighe, M.D., ("Dr. Beighe"), (collectively, "the MES Defendants"), have moved to dismiss the First Amended Complaint as to MES pursuant to Federal Rule of Civil Procedure 12(b)(6), and as to Dr. Beighe pursuant to Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, 12(b)(2).  (Doc. No. 11).  Defendants UnitedHealth Group, Inc. ("United"), Oxford Health Insurance, Inc. ("Oxford"), Dennis Sandoval, M.D., ("Dr. Sandoval"), and Gail Wilder, M.D., ("Dr. Wilder"), (collectively "the UnitedHealth Defendants"), have moved to dismiss the First-Amended Complaint with regards to all claims against Dr. Sandoval pursuant to Federal Rule of Civil

1

Procedure 12(b)(2) or 12(b)(6); all claims against Dr. Wilder pursuant to Federal Rule of Civil Procedure 12(b)(6); and certain claims against United and Oxford pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Doc. No. 12).

Plaintiff, Linda S. Skelcy ("Plaintiff"), individually and as general administrator and administrator ad prosequendum of the Estate of James T. Skelcy, opposes the motions, (Doc. Nos. 16, 17), and has filed a Cross-Motion for Leave to Amend the Complaint.  (Doc. No. 18).  Both the MES Defendants and the UnitedHealth Defendants oppose the cross-motion.  (Doc. Nos. 21, 22).  The Court has decided these motions after consideration of the parties' written submissions and without oral arguments pursuant to Federal Rule of Civil Procedure 78(b).

For the reasons listed herein, the Court finds as follows: 1) the MES Defendants' Motion to Dismiss will be granted with respect to the negligence claims against MES and Dr. Beighe; 2) the UnitedHealth Defendants' Motion to Dismiss will be granted with respect to Plaintiff's negligence claims against Drs. Sandoval and Wilder and Plaintiff's negligence per se claims against the UnitedHealth Defendants (Count III), and will be denied with respect to Plaintiff's claims for punitive damages; and 3) Plaintiff's Cross-Motion to Amend will be granted with respect to Count III and to the withdrawal of Counts VI, VII, IX and XI of the First Amended Complaint.

**Background**

*A.  The Parties*

Decedent James T. Skelcy, a New Jersey resident, died on August 11, 2010 as a result of chronic dermatomyositis, interstitial pulmonary fibrosis, endomyocardial fibrosis, and cardiac arrhythmia.  (Doc. No. 4, hereinafter, "First Amd. Compl.," at ¶¶ 86-87).  Plaintiff, individually and as general administrator and administrator ad prosequendum of Mr. Skelcy's estate, has

brought an action to recover damages for the wrongful denial and delay of health insurance benefits that allegedly deprived proper and timely treatment of Mr. Skelcy's medical condition and caused his death. (*Id.* at ¶¶ 1-2). Plaintiff names various Defendants in this suit who participated in the process of reviewing and pre-approving treatment for his condition.

Defendant United is an insurance company incorporated in Delaware with its principal place of business in Minnesota. (*Id.* at 4). Defendant Oxford is a New York corporation with its principal place of business in New York. (*Id.* at ¶¶ 5, 7). According to Plaintiff, Oxford is a wholly owned and controlled subsidiary of United. (*Id.* at ¶ 5). Plaintiff alleges that at all relevant times to the action Mr. Skelcy was covered by a health insurance policy provided by United, by and through Oxford. (*Id.* at ¶¶ 7, 19-20).

Defendant Dr. Sandoval is a licensed ophthalmologist with a practice in Albuquerque, New Mexico, and was the Medical Director assigned by United and/or Oxford to review the prescription for treatment issued by Mr. Skelcy's treating rheumatologist in or about July of 2010. (*Id.* at ¶ 11). Dr. Sandoval has an agency or employment relationship with United and/or Oxford. (*Id.* at ¶ 12).

Defendant Dr. Wilder is a medical doctor with a business address in Purchase, New York. (*Id.* at ¶ 13). She was employed by United and/or Oxford, and was tasked with the oversight and review of the prescription for treatment issued by Mr. Skelcy's treating rheumatologist in or about July 2010. (*Id.*).

Defendant MES is a Michigan corporation with its principal place of business in Georgia. (*Id.* at ¶ 10). MES provided a peer review assessment of an expedited appeal for treatment that was sent to the UnitedHealth Defendants on Mr. Skelcy's behalf. (*Id.* at ¶¶ 67, 69). A peer

review assessment provides an independent determination of whether appropriate care has been or is being provided. (*Id.* at ¶ 70).

Defendant Dr. Beighe is a medical practitioner licensed to practice in Arizona, with a business address in Tempe, Arizona. (*Id.* at ¶¶ 8-9). During the relevant times of this action, Dr. Beighe had an agency relationship with MES, and was assigned by MES to provide a "peer review report" of the denial of treatment for Mr. Skelcy. (*Id.*).

*B. Mr. Skelcy's Diagnosis and Death*

Mr. Skelcy was diagnosed with dermatomyositis, a connective-tissue disease characterized by skin and muscle inflammation, and, as a secondary condition, interstitial lung disease, in or about July 2007. (First Amd. Compl. at ¶¶ 24-25). Initially, Mr. Skelcy was treated with various first-line therapies, to which he proved resistant. (*Id.* at ¶¶ 26-31). In or about August 2009, Mr. Skelcy's treating rheumatologist prescribed Rituximab ("Rituxan"), of which Mr. Skelcy received two treatments. (*Id.* at ¶¶ 32-35). After these treatments, Mr. Skelcy's condition improved and he went into remission for nearly a year. (*Id.* at ¶ 39).

In or about July 2010, his condition again began to worsen. (*Id.* at ¶ 41). His rheumatologist prescribed another dose of Rituxan. (*Id.* at ¶ 42). Two days before Mr. Skelcy's scheduled Rituxan treatment, July 12, 2010, his treating rheumatologist sought pre-certification from the UnitedHealth Defendants for the Rituxan treatment. (*Id.* at ¶ 44). He was unable to secure approval of the treatment, however, through the precertification process provided by Mr. Skelcy's insurance plan at the time, United's "New Jersey individual PPO Plan C." (*Id.* at ¶¶ 19-20, 44). This plan was not within the scope of the Employee Retirement Income Security Act, 29 U.S.C. 18. (*Id.* at ¶ 23).

On or about July 13, 2010, the rheumatologist faxed a letter of medical necessity to Oxford, which included the word "STAT." (*Id.* at ¶ 46). The letter detailed the intention to administer Rituxan treatment the following day, described Mr. Skelcy's previous lack of positive response to first-line therapies, noted Mr. Skelcy's positive response to Rituxan, and finally, discussed the return of Mr. Skelcy's symptoms. (*Id.* at ¶ 46). The letter concluded with the statement that Mr. Skelcy required either Rituxan or an IVIG infusion. (*Id.* at ¶ 47). After requesting and reviewing office notes documenting the medical necessity of the Rituxan treatment, (*id.* at ¶ 45), Dr. Sandoval denied the precertification of Rituxan on or about July 13, 2010, (*id.* at ¶ 63). There was no reference or communication of any consideration of IVIG to Mr. Skelcy or the treating rheumatologist. (*Id.* at ¶ 65).

In addition to numerous telephone conversations in which Mr. Skelcy's rheumatologist spoke with the UnitedHealth Defendants' representatives explaining the need for treatment, the UnitedHealth Defendants received on or about July 13, 2010 a request for an "Expedited Utilization Review Appeal" regarding the denial of Rituxan and/or IVIG treatment, and the clinical information necessary to process the expedited appeal. (*Id.* at ¶¶ 67-68).

On or about July 15, 2010, the UnitedHealth Defendants transmitted the appeal to MES for a peer review assessment. (*Id.* at ¶¶ 69-70). Dr. Wilder submitted a narrative comment with the appeal acknowledging that some literature indicated that Rituxan was effective for Mr. Skelcy's condition, but that it generally was not the standard of care for the condition, nor listed in an influential medical database with a recommendation. (*Id.* at ¶ 71). MES assigned Dr. Beighe the task of providing the assessment. (*Id.* at ¶ 72).

In her July 16, 2010 assessment, Dr. Beighe noted Mr. Skelcy's previous Rituxan results and subsequent recovery, the then-present recurrence of his symptoms, and the treating

rheumatologist's recommendation of Rituxan or IVIG.  (*Id.* at ¶¶ 75-76).  Dr. Beighe wrote that Rituxan would not be the standard of care for Mr. Skelcy's disease, that there was inadequate medical literature to conclude Rituxan would be effective in treating Mr. Skelcy's condition, and that IVIG would meet the standard of care.  (*Id.* at ¶¶ 77-78).  On or about that same day, the UnitedHealth Defendants, by and through Dr. Wilder, did not communicate approval or consideration of IVIG to Mr. Skelcy or his treating rheumatologist, but did deny the request to treat Mr. Skelcy with Rituxan.  (*Id.* at ¶¶ 79-81).  In a contemporaneous internal memo, Wilder noted that there were not at least two articles in the peer reviewed literature to show the proposed therapy was more likely to benefit Mr. Skelcy than standard available therapies, but that IVIG would be an alternative.  (*Id.* at ¶ 80).

On or about July 30, 2010, the treating rheumatologist faxed a letter to Dr. Wilder explaining Mr. Skelcy's previous positive response to Rituxan and his status as the main family breadwinner; the rheumatologist also noted that a further deterioration of Mr. Skelcy's condition was "imminent."  (*Id.* at ¶ 83).  On August 9, 2010, the UnitedHealth Defendants reversed their decision and approved precertification for Rituxan treatment.  (*Id.* at ¶ 84).  Despite allegedly scheduling a treatment for the earliest opportunity, Mr. Skelcy died from the effects of his illness on August 11, 2010, 36 hours after approval.  (*Id.* at ¶¶ 85-87).

### C. *The Present Motions*

In response to the First Amended Complaint, the UnitedHealth Defendants have moved to dismiss Counts V, VI, and VII against Dr. Sandoval pursuant to Federal Rule of Civil Procedure 12(b)(2) or 12(b)(6) and against Dr. Wilder pursuant to Federal Rule of Civil Procedure 12(b)(6).  The UnitedHealth Defendants have also moved to dismiss Count III pursuant to Federal Rule of Civil Procedure 12(b)(6), and all claims for punitive damages.  (Doc.

6

No. 12). The MES Defendants have moved to dismiss all claims against MES pursuant to Federal Rule of Civil Procedure 12(b)(6), and against Dr. Beighe pursuant to Federal Rule of Civil Procedure 12(b)(6) or 12(b)(2) (Counts VIII, IX, X, and XI). (Doc. No. 11).

In response to the motions to dismiss, Plaintiff has filed a cross-motion to amend and submitted a proposed Second Amended Complaint. (Doc. No. 18). Of the original eleven counts, Plaintiff moves to withdraw Counts VI, VII, IX and XI. (Doc. Nos. 18, 18-3). In the proposed Second Amended Complaint, Plaintiff seeks to maintain the following counts (listed here in simplified form):

1) proposed Count I, claiming negligence on the part of United and Oxford;

2) proposed Count II, claiming breach of contract on the part of United and Oxford;

3) proposed Count III, claiming negligence per se against the United and Oxford;

4) proposed Count IV, claiming that the United and Oxford acted in bad faith and breached their implied covenant of good faith and fair dealing;

5) proposed Count V, claiming negligence on the part of Drs. Sandoval and Wilder, M.D., individually and as employees/agents of United and/or Oxford;

6) proposed Count VI, claiming negligence on the part of Dr. Beighe, individually and as an employee/agent of MES; and

7) proposed Count VII, claiming negligence against MES.

(Doc. No. 18-4, hereinafter, "Second Amd. Compl."). Plaintiff still seeks punitive damages for each count. (*Id.*).

Both the UnitedHealth Defendants and the MES Defendants oppose Plaintiff's motion to amend, claiming the futility of amendment in the face of their original motions to dismiss. (Doc. Nos. 21, 22).

**Discussion**

*A. Legal Standard*

    *i.    Motion to Dismiss*

A motion under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). The defendant bears the burden of showing that no claim has been presented. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). When considering a Rule 12(b)(6) motion, a district court should conduct a three-part analysis. *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'take note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Ashcroft v. Iqbal*, 56 U.S. 662, 675 (2009)). Second, the court must accept as true all of a plaintiff's well-pleaded factual allegations and construe the complaint in the light most favorable to the plaintiff. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). The court may disregard any conclusory legal allegations. *Id.* Finally, the court must determine whether the "facts are sufficient to show that plaintiff has a 'plausible claim for relief.'" *Id*. at 211 (quoting *Iqbal*, 556 U.S. at 679). Such a claim requires more than a mere allegation of an entitlement to relief or demonstration of the "mere possibility of misconduct;" the facts pled must allow a court reasonably to infer "that the defendant is liable for the misconduct alleged." *Id*. at 210, 211 (quoting *Iqbal*, 556 U.S. at 678-79).

    *ii.    Motion to Amend*

It has been the accepted and encouraged policy that courts should liberally grant leave to amend pleadings when justice so requires. *See* Fed. R. Civ. P. 15(a); *see also Foman v. Davis,* 371 U.S. 178, 182 (1962); *Dole v. Arco Chem. Co.,* 921 F.2d 484 (3d Cir. 1990). The determination of a motion to amend falls within the discretion of the trial court and is guided by

8

Federal Rule of Civil Procedure 15(a).  *Foman,* 371 U.S. at 182.  When the movant's request to amend is "a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits."  *Id.*

Leave to amend may be denied on the grounds of bad faith, dilatory motive, or undue delay on the part of the moving party.  *See Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 220 (3d Cir. 2005) (citing *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir. 1993)).  The Third Circuit regards the possibility of prejudice to the non-moving party as the "touchstone for the denial of the amendment."  *Lorenz*, 1 F.3d at 1414 (quoting *Cronell & Co., Inc. v. Occupational Safety and Health Review Comm'n*, 573 F.2d 820, 823 (3d Cir. 1978)).  To successfully argue prejudice, a non-moving party must show that unfair disadvantage or deprivation would result.  *See Heyl & Patterson Int'l, Inc. v. F.D. Rich Housing of the V.I., Inc.,* 663 F.2d 419, 426 (3d Cir. 1981).

Leave to amend may also be denied where such amendment would be futile.  *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008) (citing *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002)).  "'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted."  *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000) (quoting *In re Burlington Coat Factor Sec. Lit.,* 114 F.3d 1410, 1434 (3d Cir. 1997)).  The District Court assesses futility under the same standard as a Rule 12(b)(6) motion, discussed above.  *Shane*, 213 F.3d at 115.

  B. Analysis

None of the Defendants argue that Plaintiff has exercised bad faith, dilatory motive, or undue delay in moving to amend the First Amended Complaint, nor that they would suffer

9

prejudice as a result of such submission. Instead, both the UnitedHealth Defendants and the MES Defendants argue that the Second Amended Complaint should be denied as futile.

Given that the inquiry for determining the futility of amendment and a 12(b)(6) motion to dismiss are the same, the Court will analyze the motions to dismiss and the motion to amend concurrently. The Court need not engage in the inquiry of whether or not the claims against Drs. Sandoval and Beighe may be dismissed on 12(b)(2) grounds, as those claims may be adequately resolved under 12(b)(6). Thus, the Court will first dispose of the counts in the First Amended Complaint that should be dismissed based on agreement between Plaintiff and Defendants. The Court will then consider the question of whether punitive damages are appropriate given the pleadings. Finally, the Court will analyze proposed Counts III, V, VI and VII of the Second Amended Complaint in turn.

>   i.   *Counts to be Dismissed from the First Amended Complaint*

Plaintiff has asked to dismiss Counts VI, VII, IX and XI of the First Amended Complaint. (Doc. No. 18). Given that Defendants have also moved to dismiss these counts (Doc. Nos. 11, 12), the Court dismisses the claims contained within with prejudice.

>   ii.   *The Claims for Punitive Damages*

In each count of the proposed Second Amended Complaint, Plaintiff demands punitive damages. Punitive damages "are awarded as punishment or deterrence for particularly egregious conduct." *Nappe v. Aschelewitz, Barr, Ansell & Bonello*, 97 N.J. 37, 48 (1984) (citing *Leimgruber v. Claridge Assocs.*, 73 N.J. 450, 454 (1977). Accordingly, under New Jersey Law,

> Punitive damages may be awarded to the plaintiff only if the plaintiff proves by clear and convincing evidence, that the harm suffered was the result of the defendant's acts or omissions, and such acts or omissions were actuated by actual malice or accompanied by a wanton and willful disregard of persons who foreseeably might be harmed by those acts or omissions. This burden of proof may not be satisfied by proof of any degree of negligence including gross negligence.

N.J. Stat. Ann. § 2A:15-5.12 (West 2012). Actual malice, as defined by the New Jersey Supreme Court, is "nothing more or less than intentional wrongdoing – an evil-minded act." *Di Giovanni v. Pessel*, 55 N.J. 188, 191 (1970). Willful or wanton conduct has been defined as the "conscious and deliberate disregard of the interests of others." *Nappe*, 97 N.J. at 50 (quoting W. Prosser, Handbook on the Law of Torts § 2, at 9-10 (2d ed. 1955).

Despite the fact that punitive damages are rarely awarded in a case of contractual breach, a demand for punitive damages is not inappropriate in the context of insurance. While some cases have denied claims for punitive damages based upon the theory that New Jersey statutory law already provides sufficient deterrence against the misconduct of insurance companies, *see*, *e.g.*, *Milcarek v. Nationwide Ins. Co.*, 190 N.J. Super. 358, 368 (1983) (finding that available statutory remedies undermined the wisdom of additionally imposing punitive damages for contractual breach on insurance companies), others have found that "[r]ecognition of an action permitting an insured to recover damages in excess of the actual amount owed under the contract would provide an effective means of countering the existing incentives for an insurance company to wrongfully delay or deny payment." *DiSalvatore v. Aetna Cas. & Sur. Co.*, 624 F. Supp. 541, 543 (D.N.J. 1986) (concluding, in its discussion of the ability to recover damages on a theory of bad faith against an insurance company, that the state Supreme Court "would provide insureds with [the ability to recover damages in excess of the actual amount owed under the contract] when insurance companies withhold payments maliciously and without probable cause").

The UnitedHealth Defendants argue that Plaintiff fails to sufficiently plead facts to support claims of punitive damages. (Doc. No. 12-1 at III.D). Indeed, the UnitedHealth Defendants argue the opposite of actual malice or wanton and willful disregard may be shown by the pleadings: the UnitedHealth Defendants responded to the precertification request within one

11

day, the expedited appeal within three days, and approved the Rituxan treatment within 10 days of the July 30 appeal. (*Id.*). Moreover, argue the UnitedHealth Defendants, the language of the treatment requests did not indicate that Mr. Skelcy was in danger of dying. (*Id.*).

Plaintiff in response argues that pursuant to N.J. Stat. Ann. 2A:15-5.12 (West 2012) the *trier of fact* should be responsible for determining from the relevant evidence whether punitive damages should be awarded. (Doc. No. 16 at III). In reaching such a determination, the trier of fact considers factors such as: the likelihood of harm due to a defendant's conduct; a defendant's "awareness or reckless disregard" of that likelihood; and the subsequent conduct or concealment of subsequent conduct that may have taken place in the wake of learning of the likelihood of harm. N.J. Stat. Ann. 2A:15-5.12(b) (West 2012).

Plaintiff argues that the likelihood of harm and the UnitedHealth Defendants' reckless disregard of that likelihood could be established from, *inter alia*: 1) the 50% mortality rate expected of Mr. Skelcy's condition if left untreated; 2) the successful treatment of Mr. Skelcy's condition via Rituxan the previous year; and 3) the warnings from the treating rheumatologist of an "imminent" deterioration of Mr. Skelcy's condition. (*Id.*). Plaintiff further points to Dr. Wilder's decision to submit a narrative comment in the peer review evaluation request wherein she noted that Rituxan was not the standard of care as evidence that Dr. Wilder "purposefully tainted the peer review assessment." (*Id.*). Finally, Plaintiff argues that the failure to communicate approval of IVIG treatment to the treating rheumatologist or Mr. Skelcy is evidence of purposeful concealment on the part of the UnitedHealth Defendants. (*Id.*).

Upon review of the arguments, the Court finds that while the possibility that there was sufficiently egregious conduct to warrant punitive damages in this case is small, it still remains. The Court is hesitant to reach a final decision before discovery is complete, and before it can be

12

more fully evaluated whether a trier of fact could find punitive damages justified. The UnitedHealth Defendants' motion to dismiss claims for punitive damages is therefore denied without prejudice.

### iii.  Proposed Count III of the Second Amended Complaint

In Count III of the First Amended Complaint, Plaintiff alleged that United and Oxford had committed negligence per se by violating N.J. Stat. Ann. 17B:26-2.1g (West 2012) and N.J. Stat. Ann. 17B:30-52 (West 2012). (First Amd. Compl. at ¶¶ 107-122). In their motion to dismiss that complaint, the UnitedHealth Defendants argued that there was no private right of action under those statutes and thus, that Count III stated no claim upon which relief could be granted. (Doc. No. 12-1 at III.C). In the Second Amended Complaint, it appears that Plaintiff has attempted to address those concerns by bringing the negligence per se claim under a different statute, N.J. Stat. Ann. 2A:53A-30 (West 2012), also known as the New Jersey "Health Care Carrier Accountability Act," ("HCCAA"). (Second Amd. Compl. at ¶¶ 110-13). While the UnitedHealth Defendants do not deny that the HCCAA provides for a private right of action, they note that the amended Count III still contains claims that the UnitedHealth Defendants violated N.J. Stat. Ann. 17B:26-2.1g. (Doc. No. 22).

Upon review of the Second Complaint, the Court finds that there does appear to be a legitimate cause of action under the HCCAA, and that amendment with respect to this count is not futile. As for the portions of Count III that still refer to the prior, inappropriate law, the Court cannot determine that these references are not merely a careless error. Thus, while the Court will grant the UnitedHealth Defendants' motion to dismiss Count III as it appears in the First Amended Complaint and as proposed in the Second Amended Complaint, the Court does so

without prejudice, and will grant Plaintiff leave to amend any shortcomings with regards to Count III for resubmission to the Court.

        *iv.*    *Proposed Count V of the Second Amended Complaint*

Count V of the proposed Second Amended Complaint advances a claim of negligence against Drs. Sandoval and Wilder, individually and in their capacity as agents/employees of the United and/or Oxford. (Second Amd. Compl. at ¶¶ 133-141). In making this claim, the proposed Complaint asserts that employees and agents of the UnitedHealth Defendants had a "heightened duty" to act in the best interests of an insured party, like Mr. Skelcy, "particularly in providing coverage of contracted for medical benefits, complying with New Jersey law . . . and ensuring the health, welfare and safety of Mr. Skelcy where contractually required without arbitrarily denying valid claims on the basis of financial considerations." (*Id.* at 135). This heightened duty came from the fiduciary relationship allegedly formed between the UnitedHealth Defendants and Mr. Skelcy via the insurance contract. (*Id.*) Plaintiff alleges that Drs. Sandoval and Wilder then breached that duty when they failed to exercise the ordinary care of a physician responsible for the treatment decisions of health insurance claims. (*Id.* at ¶ 137).

The UnitedHealth Defendants move to dismiss this count by arguing that nothing under New Jersey law "impose[s] a duty on physicians like Drs. Sandoval and Wilder who do not actually examine the patient," or have a traditional physician-patient relationship. (Doc. No. 12-1 at III.B.1).

Plaintiff, distancing itself from traditional medical malpractice arguments, maintains that "the reviewing physician" in the insurance context "wields the broad power to declare the denial of medical coverage of a treatment plan, effectively preempting the treating physician's opinions and interfering with patient care." (Doc. No. 16 at I.A). Says Plaintiff, "patients . . . pay

14

premiums in exchange for coverage of medically necessary treatments and the expectation that necessary treatment will not be arbitrarily withheld . . . . These physicians represent the front line of medical coverage decisions and, therefore, directly manage and influence the fiduciary relationship between patient and insurer." (*Id.*).

However, despite Plaintiff's appeals, Plaintiff provides no case law that supports either the creation of a fiduciary relationship or a duty in this instance. While it is true that New Jersey courts have found a fiduciary relationship between an insurer and an insured in special circumstances, the cases available appear to address situations distinct from that at hand. *See*, *e.g.*, *Rova Farms Resort, Inc. v. Investors Ins. Co. of Am.*, 65 N.J. 474 (N.J. 1974) (finding a fiduciary relationship between insurer and insured where the insurer had "contractually restricted the independent negotiating power of insured" with respect to settlement with a third party). In a case concerning automobile insurance, *Kocse v. Liberty Mut. Ins. Co.*, 152 N.J. Super. 371 (1977), the court found that "an insurer's task of determining whether the insurance policy provided coverage of an accident cannot be deemed to give rise to . . . a [fiduciary] duty on the part of the insurer," because in such a situation, "[t]he parties . . . are merely dealing with one another as they would in a normal contractual situation . . . . [and not] as principal and agent." 152 N.J. at 379. As a result, "the company is only required to fulfill the ordinary contractual duties imposed by the insurance agreement." *Id.* Similarly, the UnitedHealth Defendants and Mr. Skelcy were in the position of regular contracting parties; no fiduciary relationship existed.

As for whether or not a duty existed between Drs. Sandoval and Wilder and Mr. Skelcy, Plaintiff has failed to cite precedent that would permit this Court to find doctors engaged in the act of reviewing claims for pre-approval of treatment coverage, without examination of the patient or the existence of a traditional physician-patient relationship, liable in a negligence

15

action.  The Court notes that Plaintiff may still have recourse for any act of negligence or wrongdoing on the part of Drs. Sandoval and Wilder under the HCCAA, which declares that a health carrier is liable for the acts of its employees or agents.  Thus, the Court dismisses proposed Count V, originally also Count V in the First Amended Complaint, with prejudice.

        *v.*    *Proposed Counts VI and VII of the Second Amended Complaint*

The proposed Second Amended Complaint preserves in Counts VI and VII the same negligence claims against Dr. Beighe and MES that were brought in the First Amended Complaint in Counts VIII and X.  The Court agrees with the MES Defendants that these claims from the First Amended Complaint should be dismissed for failure to state a claim on which relief can be granted, and that any Motion to Amend would be futile.

In reaching this conclusion, the Court finds that there is both a lack of a demonstrable duty to Mr. Skelcy on the part of the MES Defendants and of causation.  In sum: there was no contractual relationship between the MES Defendants and Mr. Skelcy; there exists no grounds for traditional medical malpractice claims against Dr. Beighe; and there appears to be nothing supporting the existence of a special relationship imposing a duty on the MES Defendants.  Thus, the Court cannot find a duty to Mr. Skelcy that the MES Defendants may have breached.  Moreover, given that the MES Defendants neither set the standard for review in the UnitedHealth Defendant treatment approval process, nor made the final judgment on treatment certification, and indeed, even recommended the IVIG treatment that Mr. Skelcy's rheumatologist requested as an alternative to Rituxan, the Court cannot find a sufficient nexus between the actions of the MES Defendants and Mr. Skelcy's death.  Therefore, this Court dismisses the claims against the MES Defendants with prejudice.

**Conclusion**

For the reasons stated above, and for good cause shown, 1) the MES Defendants' Motion to Dismiss will be granted with respect to the negligence claims against MES and Dr. Beighe; 2) the UnitedHealth Defendants' Motion to Dismiss will be granted with respect to Plaintiff's negligence claims against Drs. Sandoval and Wilder and Plaintiff's negligence per se claims against the UnitedHealth Defendants (Count III), and will be denied with respect to the claims for punitive damages; and 3) Plaintiff's Cross-Motion to Amend will be granted with respect to Count III and to the withdrawal of Counts VI, VII, IX and XI of the First Amended Complaint. An appropriate order will follow.

/s/Anne E. Thompson
ANNE E. THOMPSON, U.S.D.J.

Dated: December 5, 2012