NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| Linda S. SKELCY,<br><br>    Plaintiff,<br><br>v.<br><br>UNITEDHEALTH GROUP, INC.; OXFORD HEALTH INSURANCE, INC.; Denise BEIGHE, M.D., individually and as an employee/agent of Medical Evaluations Specialists, Inc.; MEDICAL EVALUATION SPECIALISTS, INC.; Dennis SANDOVAL, M.D., individually and as an employee/agent of UnitedHealth Group; and Gail WILDER, M.D., individually and as an employee/agent of UnitedHealth Group,<br><br>    Defendants. | Civ. No. 12-01014<br><br>OPINION |

THOMPSON, U.S.D.J.

   This matter comes before the Court on Plaintiff Linda Skelcy's ("Plaintiff's") Motion for a Certificate of Appealability pursuant to Federal Rule of Civil Procedure 54(b). (Doc. No. 26). Plaintiff brings this motion in response to the Court's December 5, 2012 Order ("December 5 Order"), (Doc. No. 25), which effectively dismissed Defendants Denise Beighe ("Dr. Beighe") and Medical Evaluation Specialists, Inc. ("MES"), (collectively, the "MES Defendants"), from the present litigation. Upon review of the parties' written submissions and without oral argument, the Court has decided the motion pursuant to Federal Rule of Civil Procedure 78(b). For the reasons included herein, the Court will deny Plaintiff's Motion for Certification.

1

BACKGROUND

Underlying the present action is Plaintiff's lawsuit, brought on her own behalf and as general administrator and administrator ad prosequendum of Mr. James T. Skelcy's ("Mr. Skelcy's") estate, to recover damages for the wrongful denial and delay of health insurance benefits that allegedly deprived proper and timely treatment of Mr. Skelcy, ultimately causing his death. (Doc. No. 34-1, Fourth Amd. Compl., at ¶¶ 1-2). The Court presumes the parties are familiar with the underlying facts and circumstances of the present case, and thus will only summarize here those facts necessary to decide the present motion.

Initially, Plaintiff brought an eleven-count complaint against various entities believed to have issued and administered Mr. Skelcy's health insurance plan and prescription benefits, including Defendants UnitedHealth Group, Inc. ("United"), Oxford Health Insurance, Inc. ("Oxford"), Dr. Dennis Sandoval ("Dr. Sandoval"), Dr. Gail Wilder ("Dr. Wilder"), and the aforementioned MES Defendants. (*See generally*, Doc. No. 4, First Amd. Compl.).

The MES Defendants moved to dismiss Plaintiff's First Amended Complaint with regards to MES pursuant to Federal Rule of Civil Procedure 12(b)(6) and with regards to Dr. Beighe pursuant to Rule 12(b)(6) and Rule 12(b)(2). (Doc. No. 11). United and Oxford (collectively "the UnitedHealth Defendants"), along with Drs. Sandoval and Wilder moved to dismiss the First Amended Complaint with respect to Dr. Sandoval pursuant to Rules 12(b)(2) and 12(b)(6); Dr. Wilder pursuant to Rule 12(b)(6); and certain claims against the UnitedHealth Defendants pursuant to Rule 12(b)(6). (Doc. No. 12). Plaintiff opposed the motions and filed a cross-motion to amend the complaint, (Doc. No. 18), which in turn was opposed by the aforementioned Defendants, (Doc. Nos. 20, 22).

On December 5, 2012, this Court issued the December 5 Order granting the MES Defendants' motion to dismiss all claims against MES and Dr. Beighe, and granting in part and denying in part both the UnitedHealth Defendants' motion to dismiss and Plaintiff's cross-motion to amend. (Doc. No. 25). As the reasoning and content of the dismissed claims are in some part relevant to the present motion, the Court will briefly review the dismissed counts.

In Counts V and VII of the Proposed Second Amended Complaint (appearing previously in the First Amended Complaint as Counts VIII and X, (Doc. No. 4, First Amd. Compl.)), Plaintiff alleged negligence on the part of Dr. Beighe and MES. (Doc. No. 18-4, Prop. Sec. Amd. Compl.). The Court dismissed these counts, finding insufficient grounds on which to base a claim of negligence where Plaintiff could not (1) demonstrate a duty owed by the MES Defendants to Mr. Skelcy; or (2) establish a sufficient nexus between their actions and his death so as to support a finding of causation. (Doc. No. 24).

Specifically, with regards to the issue of duty, the Court found there to be (1) no contractual relationship between the MES Defendants and Mr. Skelcy; (2) inadequate support for claims of traditional medical malpractice against Dr. Beighe; and (3) insufficient grounds to support the inference of a special relationship between Mr. Skelcy and the MES Defendants. (Doc. No. 24). With respect to causation, the Court found that because the MES Defendants neither set the standard for review in the UnitedHealth Defendant treatment approval process nor made the final judgment on treatment certification, Plaintiff could not support a finding of causation. (Doc. No. 24).

In Count V of the Second Amended Complaint (appearing previously as Count V in the First Amended Complaint), Plaintiff also asserted negligence: this time on the part of Drs. Sandoval and Wilder. (Doc. No. 18). In analyzing the legal basis for this count, the Court

3

ultimately rejected Plaintiff's argument that a fiduciary relationship between an insurance company's reviewing physician and the patient imposes a heightened duty on the part of the company's employees and agents to act in the best interest of the insured. (Doc. No. 24). The Court further found insufficient grounds for holding doctors liable for negligence where such doctors were engaged solely in the act of reviewing insurance claims for the pre-approval of treatment and did not share a traditional physician-patient relationship with the insured. (Doc. No. 24). The Court recognized, however, that Plaintiff might still recover damages under the Health Care Carrier Accountability Act, ("HCCAA"), N.J.S.A. 2A:53A-30, *et. seq.*, for any negligent actions taken by Drs. Sandoval and Wilder. (Doc. No. 24). The HCCAA declares that a health carrier is liable for "the health care treatment decisions of its employees, agents or other representatives . . . ." N.J.S.A. 1A:53A-33(a).

On December 21, 2012, Plaintiff moved to certify the dismissal of Counts VI and VII of the Proposed Second Amended Complaint (previously Counts VIII and X of the First Amended Complaint) for appeal. (Doc. No. 26). The MES Defendants oppose the motion. (Doc. No. 33).

DISCUSSION

A. <u>Legal Standard</u>

Federal appellate jurisdiction "is conferred and limited by Congress's grant of authority." *Berckeley Inv. Grp., Ltd. v. Colkitt*, 259 F.3d 135, 139 (3d Cir. 2001). Under 28 U.S.C. § 1291, "[t]he court of appeals . . . shall have jurisdiction of appeals from all final decisions of the district courts of the United States." In general, "an order which terminates fewer than all claims pending in an action or claims against fewer than all the parties to an action does not constitute a 'final' order for purposes of 28 U.S.C. § 1291." *Elliot v. Archdiocese of New York*, 682 F.3d 213, 219 (3d Cir. 2012). However, a district court may, under Rule 54(b), "convert an order

adjudicating less than an entire action to the end that it becomes a 'final' decision over which a court of appeals may exercise jurisdiction." *Id.*  A final district court determination regarding a claim does not *guarantee* Rule 54(b) certification; rather, Rule 54(b) certification is left to the sound discretion of the district court.  *See Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 8 (1980).

In considering whether to award Rule 54(b) certification, the Court must follow the two-step process outlined in *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427 (1956).  *See, e.g.*, *Curtiss-Wright*, 446 U.S. at 7-8 (summarizing the steps the *Sears* Court delineated for Rule 54(b) certification).  First, the Court must determine that its December 5, 2012 Order is, by some means, final.  *See generally*, *Sears*, 351 U.S. 427; *Curtiss-Wright*, 446 U.S. at 7.  If the Court determines that the December 5 Order does in fact contain a final judgment, the second step is to determine whether there is any just reason for delay.  *Curtiss-Wright*, 446 U.S. at 8; Fed. R. Civ. P. 54(b).  This second requirement "is not merely formalistic;" rather, the propriety of appeal must be either discernible from the record or from the district court's articulation of the reasons and factors underlying its decision to grant 54(b) certification.  *Elliott*, 682 F.3d at 220-21; *Allis-Chalmers Corp. v. Philadelphia Elec. Co.*, 682 F.3d 360, 364 (3d Cir. 1975); *Carter v. City of Philadelphia*, 181 F.3d 339, 346 (3d Cir. 1999).

The Court's essential inquiry in this two-step process is to determine whether "finality of judgment should be ordered to advance the interests of sound judicial administration."  *Curtiss-Wright Corp.*, 446 U.S. at 5 (internal quotations omitted).  A balance must be struck "between the undesirability of piecemeal appeals and the need for making review available at a time that best serves the needs of the parties."  *Elliott*, 682 F.3d at 220.

B. <u>Analysis</u>

Upon review of the arguments, the Court has decided to decline granting Rule 54(b) certification at this time. While the Court agrees that the December 5 Order was final with respect to the MES Defendants as parties, and therefore, satisfies the first part of the two-step analysis, the Court is unconvinced that the second portion of the test, regarding whether or not there is just reason for delay, weighs in favor of Plaintiff. In making this determination, the Court considers the arguments of the parties in the context of the five factors summarized in the Third Circuit case *Berckeley Inv. Group, Ltd. v. Colkitt*, 455 F.3d 195, 203 (3d Cir. 2006):

(1) The relationship between the adjudicated and unadjudicated claims,
(2) The possibility that the need for review might or might not be mooted by future developments in the district court,
(3) The possibility that the reviewing court might be obliged to consider the same issue a second time,
(4) The presence or absence of a claim or counterclaim which could result in a set-off against the judgment sought to be made final,
(5) Miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like.

(quoting *Allis-Chalmers Corp.*, 521 F.2d at 362).

With regards to the first factor, the Court finds that the dismissed counts that Plaintiff seeks to appeal contain the only claims of liability against MES and Dr. Beighe, and do not specifically reference the other remaining defendants to this litigation. The other, viable counts likewise do not reference the MES Defendants. Thus, this factor weighs in favor of Plaintiff.

With regards to the second factor, however, which concerns whether or not the need for appellate review might be mooted by future developments in this Court, the Court finds reason for pause. It is not uncommon for party desires and expectations to shift over the course of

litigation; the fact remains that Plaintiff may be sufficiently compensated by any damages awarded in the remaining litigation so as to obviate the need for a future appeal, thereby sparing the judicial resources of the appellate court.

Similarly, the Court is swayed by Defendants' argument with regards to the next factor that, should this Court grant a certificate of appealability with regard to this matter now, the appellate court may be forced to review similar issues should Plaintiff decide to later appeal the Court's December 5 Order with respect to Drs. Sandoval and Wilder. To support this claim, the MES Defendants reference the Court's reasoning in the Opinion accompanying its December 5 Order. With regard to the dismissal of the MES Defendants, the Court based its reasoning in part on the lack of a basis for a traditional medical malpractice claim – the foundation of which is the presence of a physician-patient relationship. With regard to the negligence claim against Drs. Sandoval and Wilder, the Court also based its dismissal in part on the lack of a traditional physician-patient relationship. The MES Defendants further point to Plaintiff's use of substantially similar reasoning and language when arguing those claims as evidence of the similarity in the underlying issue.

In response, the Court discerns two main points from Plaintiff's papers opposing the MES Defendants' contention. First, Plaintiff notes that as the underlying litigation now stands, Plaintiff may yet be compensated for any negligence on the part of Dr. Sandoval or Dr. Wilder under the HCCAA. Second, even if Plaintiff did appeal the Court's ruling regarding Proposed Count V against those doctors, Plaintiff insists that a close reading of the dismissed counts reveals that the negligence claim against Drs. Sandoval and Wilder is still sufficiently distinct from those asserted against the MES Defendants so that the appellate court would not have to expend resources considering a substantially similar issue. The duty asserted against Drs.

Sandoval and Wilder, argues Plaintiff, went to the issue of negligence in the context of a contractual arrangement; the duty asserted against Dr. Beighe and the MES Defendants did not.[1]

While the Court acknowledges Plaintiff's point that the negligence claims in issue are tailored to the different professional positions of the relevant parties and arguably stem from different theoretical origins, the Court still finds the underlying issue in each instance – whether or not reviewing physicians in the insurance context may be held liable without the existence of a traditional doctor-patient relationship – to be sufficiently similar so as to discourage certification of the December 5 Order against the MES Defendants alone.

Finally, with respect to the various miscellaneous factors that may be considered,[2] the Court acknowledges Plaintiff's concerns for duplicate discovery should the appellate court reverse the December 5 Order and the case against the MES Defendants proceed to trial. The

---

[1] With respect to Drs. Sandoval and Wilder, Plaintiff's First Amended Complaint and Proposed Second Amended Complaint read in pertinent part:

> . . . Dr. Sandoval and Dr. Wilder were negligent in reviewing, denying and delaying the proper and necessary treatment of Mr. Skelcy's condition and failed to exercise the ordinary care and diligence of an employee/agent responsible for the oversight and treatment decisions of health insurance claims, with due regard to the safety, well-being, and rights of Mr. Skelcy . . . .

(Doc. No. 4, First Amd. Compl. at ¶ 138; Doc. No. 18, Prop. Sec. Amd. Compl. at ¶ 137).
On the other hand, with respect to the MES Defendants, the Complaint stated first that "Dr. Beighe[] was negligent in reviewing, denying and delaying the proper and necessary treatment of Mr. Skelcy's condition and failed to exercise the ordinary care and diligence of medical professionals tasked with review of health insurance claims . . . .", (Doc. No. 4, First Amd. Compl. at ¶ 177; Doc. No. 18, Prop. Sec. Amd. Compl. at ¶ 149), and second that MES "was negligent in assigning, reviewing, denying and delaying the proper and necessary treatment of Mr. Skelcy's condition and failed to exercise the ordinary care and diligence of an organization in the business of providing peer review assessments in the health insurance claim industry . . . ." (Doc. No. 4, First Amd. Compl. at ¶ 198; Doc. No. 18, Prop. Sec. Amd. Compl. at ¶ 159).

[2] The parties made no specific arguments with regards to the fourth enumerated factor inquiring into the presence or absence of a claim or counterclaim that could result in a set-off against the judgment sought to be made final.

Court further acknowledges Plaintiff's argument that the MES Defendants would likely benefit from participating in the initial litigation as opposed to possibly suffering preclusion from issues already decided upon if an appeal is granted after the underlying litigation is complete.

However, the Court notes a marked lack of certainty that such appeal would in fact be granted and the December 5 Order reversed. Currently, there exists a general hesitation on the part of courts and legislatures to hold physicians liable where they do not share a traditional physician-patient relationship with a patient, nor fall into one of the other narrowly defined exceptions. The Court finds more persuasive the MES Defendants' arguments that certification should not be granted given the great risk that it would result in the unnecessary delay of the current proceedings. In the interests of judicial economy, and indeed, in the interests of parties who would no doubt benefit from the swift closure of this unhappy case, the Court finds the fifth factor also weighs in favor of denying certification.

## CONCLUSION

Given the above analysis, the Court denies Plaintiff's Motion to Certify this Court's December 5 Order pursuant to Rule 54(b). An appropriate Order accompanies this Opinion.

/s/Anne E. Thompson
ANNE E. THOMPSON, U.S.D.J.

Dated: March 25, 2013