UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| LINDA S. SKELCY | : | Civil Action No. 12-1014 (AET) |
| Plaintiff, | : | |
| v. | : | MEMORANDUM OPINION |
| | : | AND ORDER |
| UNITEDHEALTH GROUP, INC. et al | : | |
| Defendants. | : | |

This matter comes before the Court on the informal application of Plaintiff Linda S. Skelcy to compel Defendants UnitedHealth Group, Inc. and Oxford Health Insurance (collectively "UHG") to provide certain discovery. See letter from Plaintiff's counsel dated January 10, 2014 ("Pltf. Ltr."). Defendants have opposed Plaintiff's application. See letter from Defendants' counsel dated January 17, 2014 ("Deft. Ltr."). Oral argument was conducted on March 17, 2014. For the reasons that follow, Plaintiff's application is **GRANTED**.

I. Factual Background

Plaintiff is the surviving spouse and administrator of the Estate of James T. Skelcy. She alleges, among other things, that UHG wrongfully delayed approval of health benefits which deprived her husband of necessary and timely treatment of his medical condition thereby causing his death. See Plaintiff's Complaint [dkt. no. 31-1].

In July 2007, Mr. Skelcy was diagnosed with dermatomyositis, a connective tissue disease, as well as interstitial lung disease. In August 2009, his treating physician prescribed treatment using the drug Rituximab. At that time, Mr. Skelcy was insured under a different health insurance plan administered by United Healthcare which approved coverage of the

treatment.  Following this treatment, Mr. Skelcy's condition improved markedly.  Unfortunately, after approximately one year, Mr. Skelcy's symptoms reemerged.  In response, his physician prescribed additional treatment with Rituximab.

Prior to the scheduled administration of the drug, UHG denied coverage for the treatment and requested documentation supporting its medical necessity.  Mr. Skelcy's physician responded providing office notes, medical records and a letter describing the medical necessity of the prescribed treatment.  Thereafter, Mr. Skelcy's physician appealed UHG's determination.

On July 15, 2010, UHG transmitted the appeal to Defendant Medical Evaluation Specialists, Inc. ("MES") for a peer review assessment.  MES' reviewing physician, Dr. Beighe concluded that the use of Rituximab is not "standard of care" for Mr. Skelcy's condition.  However, he added, "IVIG would be standard of care at this point." Pltf. Ltr. at page 2.  On this basis, UHG denied approval of the treatment.  Plaintiff maintains that UHG failed to communicate that it considered IVIG to be an appropriate treatment option.  Id.

Following further communications between Mr. Skelcy's physician and UHG, on August 9, 2010 UHG approved the Rituximab treatment.  Thereafter, arrangements were made to administer the treatment on August 16, 2010. Sadly, on August 11, 2010, Mr. Skelcy died.  Id. at page 3.

UHG denies any causal connection between the delay in approving treatment and Mr. Skelcy's death on August 11, 2010.  UHG maintains that the use of Rituximab to treat dermatomyositis is an "off label use".  Deft. Ltr. at page 1. Further, UHG maintains, Mr. Skelcy's physician never submitted a pre-authorization request to approve treatment with IVIG, another prescription drug.  Id at page 2.  Nonetheless, UHG notes, "less than a month after the

initial denial, [it] reversed its decision, and on August 9, it approved the prior authorization for [Rituximab]." Id. at page 2.

**II. Discovery Dispute**

In August 2013, Plaintiff served Interrogatories and Requests for Production of Documents ("RFP's") on Defendants. Despite the parties' best efforts, a dispute remains with respect to Plaintiff's interrogatory numbers 38 through 44 and RFP numbers 43 through 47. In sum, Plaintiff wants to know how many requests for Rituximab treatment associated with relevant medical conditions UHG has received in the last five years, how many such requests were approved and how many were denied; how many requests for IVIG treatment were received, how many were approved and how many were denied; and how many requests for Rituximab treatment were initially denied "due to insufficient documentation of medical necessity".

> Generally, UHG objected to each of Plaintiff's interrogatories stating:
>
>> Defendants object to this interrogatory on the grounds that it is irrelevant and not reasonable calculated to lead to the discovery of admissible evidence. Defendants also object on the ground that the interrogatory is overly broad, and requiring a response would be unduly burdensome.

Plaintiff's RFP's essentially track the interrogatories and seek production of "any and all documents, writings, materials, electronically stored information and/or objects" that relate to the subject of each interrogatory. UHG's objected to each RFP on the same grounds as it objected to Plaintiff's interrogatories.

With respect to these discovery requests, Plaintiff maintains, the information sought is relevant to her claim that UHG's "denial of coverage on the basis that Rituximab was 'not a proven treatment' and not 'standard of care' for [Mr. Skelcy's] disease is inconsistent with its prior approval of the same treatment." Pltf. Ltr. at pages 7-8. Plaintiff also argues that "the discovery requests at issue represent relevant and likely admissible, evidence as to the 'habit' or 'routine practice' of the defendant in claims very similar to the decedent's." Id. at page 8. Finally, Plaintiff maintains, "the discovery requests at issue are narrowly tailored and circumscribed to a five (5) year period." Id. at page 9. At the same time, "Plaintiff has not received any explanation or reasoning as to why [these] discovery requests would be 'burdensome' on Defendants." Id. at page 7.

In opposition, UHG maintains that information related to claims of other insureds is "irrelevant to how [UHG] handled the 2010 request for [Rituximab] for Mr. Skelcy" and "not likely to lead to admissible evidence that tends to prove or disprove Plaintiff's claim against [UHG]." Deft. Ltr. at pages 3-4. Further, UHG argues, "the sheer breadth of these requests renders even preliminary searches unduly burdensome, as [UHG's] major platforms' claims data pre-dating July 2010 are archived and not readily searchable." Id. at page 3.

### III. Legal Standard and Analysis

Pursuant to Fed. R. Civ. P. 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense" and "the court may order discovery of any matter relevant to the subject matter involved in the action." See also Pearson v. Miller, 211 F.3d 57, 65 (3d Cir. 2000). The liberal language of Fed. R. Civ. P. 26(b)(1) dictates that relevancy is to be broadly construed for discovery purposes. As a result, discovery need not be confined to matters of admissible evidence but may encompass that which "appears

reasonably calculated to lead to the discovery of admissible evidence." Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978); see also Buffington v. Gillette Co., 101 F.R.D. 400 (W.D.Okla. 1980).  At the same time, the Federal Rules provide that the Court "must limit the frequency or extent of discovery otherwise allowed" if it concludes that:

>  (iii)   the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

Fed. R. Civ. P. 26(c).

Ultimately, "[t]he precise boundaries of Rule 26 relevance standard depend upon the context of each particular action, and the determination of relevance is within the discretion of the District Court."  E.E.O.C v. FAPS, Inc., Civil Action No. 10-3095 (PGS), 2012 WL 1656738, at *23 (D.N.J. May 10, 2013) (Arpert, J.).

**IV. Conclusion and Order**

Having considered the papers submitted and the arguments of counsel, in light of the liberal standard for discovery, the Court concludes that the information Plaintiff seeks to obtain is relevant to the clams asserted in this case.  Whether such information is ultimately admissible is not the appropriate consideration at this stage of the proceedings.

Plaintiff contends that UHG's stated reasons for the initial denial of coverage for the drug treatment prescribed by Mr. Skelcy's physician were inconsistent with the prior authorization of the same treatment, inconsistent with the proven efficacy of the treatment, and inconsistent with the terms of coverage in the operative insurance contract.  Accordingly, Plaintiff argues, as the reasoning for UHG's denial of Mr. Skelcy's claim "is based upon its understanding of objective medical standards, as opposed to any issue specific to the Decedent, discovery applying this

'standard' to coverage decisions of other patients with the same illness who are prescribed the same drug are centrally relevant." Pltf. Ltr. at page 8.  The Court agrees.

The Court acknowledges UHG's argument that restoration and retrieval of the information sought may be difficult.  UHG has provided only a conclusory argument in this regard but has requested an opportunity to submit a detailed affidavit with respect to this burden.  Before doing so, however, in light of the Court's determination as to the relevance of Plaintiff's requests, counsel are directed to meet and confer in a good faith effort to determine the most appropriate manner in which the parties' respective interests can be accommodated.

For the foregoing reasons, Plaintiff's application to compel discovery is **GRANTED** insofar as the Court concludes that the information sought is relevant and discoverable.  No later than April 30, 2014, counsel are to submit a joint report to the Court setting forth the results of their meet and confer efforts as well as proposed schedule for the completion of discovery.

The Court will conduct a telephone status conference on June 9th at 10 am.  Defense counsel will initiate this call.

So Ordered:

s/ Douglas E. Arpert
DOUGLAS E. ARPERT, U.S.M.J.

Dated: April 8, 2014