NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| LINDA S. SKELCY, Individually and as General Administrator and Administrator ad Prosequendum of the Estate of James T. Skelcy, <br><br> Plaintiff, <br><br> v. <br><br> UNITEDHEALTH GROUP et al., <br><br> Defendants. | Civ. No. 12-1014 <br><br> **OPINION** |

THOMPSON, U.S.D.J.

The present matter comes before the Court upon Plaintiff Linda S. Skelcy's Motion in Limine seeking permission to present proof of non-economic damages at trial. (Doc. No. 54). Defendants UnitedHealth Group, Inc., United Healthcare Services, Inc., Oxford Health Plans,[1] and Oxford Health Insurance, Inc., (collectively, "Defendants") have opposed the Motion in Limine. (Doc. No. 56). For the reasons stated herein, Plaintiff's Motion in Limine will be granted.

BACKGROUND

This action involves a claim under the New Jersey Health Care Carrier Accountability Act ("HCCAA"), N.J.S.A. 2A:53A-30 et seq., which imposes liability on health insurance carriers for "negligence with respect to the denial of or delay in approving or providing medically necessary covered services." N.J.S.A. 2A:53A-33.

---

[1] This designation includes Oxford Health Plans, Inc., Oxford Health Plans, LLC, and Oxford Health Plans (NJ), Inc.

Mr. James T. Skelcy, husband of Plaintiff, was diagnosed in July 2007 with dermatomyositis, a connective tissue disease characterized by skin and muscle inflammation.  He also had interstitial lung disease secondary to the dermatomyositis.  (Doc. No. 34 at 5).  Under a self-funded ERISA account called the JPMorgan Chase Medical plan, Mr. Skelcy had tried first-line drug therapies, which failed, then tried Rituxan (Rituximab) prescribed by his rheumatologist, Dr. Pedra-Nobre, which was successful.  (*Id.* at 5-7; Doc. No. 56 at 3).

Eleven months later in July 2010, Mr. Skelcy's symptoms flared again, and Dr. Pedra-Nobre again prescribed Rituxan.  (Doc. No. 34 at 7).  However, at this time Mr. Skelcy had health insurance coverage through Defendants, and Defendants required pre-approval for the drug.  (Doc. No. 56 at 4).  Dr. Pedra-Noble requested approval of Rituxan or IVIG, which Defendants initially denied on July 13, 2010.  (Doc. No. 34 at 10).  Dr. Pedra-Nobre then requested an expedited appeal, and on July 15, 2010, Defendants requested a peer review assessment from an unrelated third party, Medical Evaluation Specialists, Inc. ("MES").  (*Id.* at 11).  Dr. Denise Beighe of MES concluded that Rituxan was not the standard of care for Mr. Skelcy's condition, stating instead that IVIG would be proper.  (*Id.* at 12).  Subsequently on July 16, 2010, Defendants denied the request to treat Mr. Skelcy with Rituxan or IVIG.  (*Id.* at 13).  At no time did Defendants communicate any approval or consideration of IVIG to Mr. Skelcy or to Dr. Pedra-Noble.  (*Id.*).

On July 30, 2010, and August 9, 2010, Dr. Pedra-Nobre spoke to Defendants but did not inform Defendants that Mr. Skelcy's condition was life threatening.  (Doc. No. 56 at 5).  On August 9, 2010, thirty-two days after the initial request, Defendants reversed their decision, approving Rituxan treatment for Mr. Skelcy.  (Doc. No. 34 at 14).  Dr. Pedra-Nobre scheduled Mr. Skelcy's Rituxan treatments to begin on August 16, 2010, but Mr. Skelcy died on August 11,

2010.  (Doc. No. 56 at 6).  The county medical examiner listed chronic dermatomyositis, interstitial pulmonary fibrosis, endomyocardial fibrosis, and cardiac arrhythmia as the causes of death.  (Doc. No. 34 at 14).

In February 2012, Plaintiff filed this suit to recover damages for the wrongful denial and delay of health insurance benefits that caused her deceased husband's death.  (Doc. No. 1).  On August 6, 2012, Defendants filed a Motion to Dismiss, which was granted in part and denied in part in this Court's December 5, 2012 order.  (Doc. No. 11, 12, 25).  In that order, the Court dismissed Plaintiff's claims against MES, Dr. Beighe, Dr. Dennis Sandoval (employee of Defendant UnitedHealth Group), and Dr. Gail Wilder (employee of Defendant UnitedHealth Group).  (Doc. No. 25).  In light of this ruling, Plaintiff's Fourth Amended Complaint now asserts four counts against Defendants: (1) negligence, (2) breach of contract, (3) negligence per se under the HCCAA, and (4) breach of the covenant of good faith and fair dealing.  (Doc. No. 34 at 14-42).

On June 6, 2014, Plaintiff filed a Motion in Limine requesting permission to present evidence of non-economic damages at trial.  (Doc. No. 54).  Defendants oppose this motion (Doc. No. 56).  Plaintiff asserts that the HCCAA permits plaintiffs to seek economic and non-economic damages while Defendant asserts that non-economic damages are barred because the HCCAA must be interpreted in conjunction with the New Jersey Wrongful Death Act ("WDA"), N.J.S.A 2A:31-5, which is limited to economic damages only.

## DISCUSSION

a.  Legal Standard

"As a general rule, *in limine* motions are inappropriate if they require the court to engage in an analysis of credibility or evidence yet to be presented."  *Sculler v. Sculler*, 348 N.J. Super.

374, 376 (Ch. Div. 2001) (citing *Bellardini v. Krikorian*, 222 N.J. Super. 457, 464 (App. Div. 1988)).  Instead, *in limine* motions are used to "clarify legal issues in advance of trial."  *Kelly v. Berlin*, 300 N.J. Super. 256, 270 (App. Div. 1997).  Statutory interpretation is an issue of law. *See State in Interest of K.O.*, 217 N.J. 83, 91 (2014).

    b.  Analysis

       Here, the issue of entitlement to non-economic damages depends upon interpretation of the HCCAA, WDA, and Survivor's Act.[2]  Thus, it is a matter of law appropriate for *in limine* review.

       The operative provision of the HCCAA states:

> Notwithstanding the provisions of any other law to the contrary, a carrier or organized delivery system shall be liable to a covered person for *economic and non-economic loss* that occurs as a result of the carrier's or organized delivery system's negligence with respect to the denial of or delay in approving or providing medically necessary covered services, which denial or delay is the proximate cause of the covered person's: (1) death; (2) serious and protracted or permanent impairment of a bodily function or system; (3) loss of a body organ necessary for normal bodily function; (4) loss of a body member; (5) exacerbation of a serious or life-threatening disease or condition that results in serious or significant harm or requires substantial medical treatment; (6) a physical condition resulting in chronic and significant pain; or (7) substantial physical or mental harm which resulted in further substantial medical treatment made medically necessary by the denial or delay of care.

N.J.S.A. 2A:53A-33(a) (emphasis added).  In contrast, the WDA imposes liability "when the death of a person is caused by a wrongful act, neglect, or default," N.J.S.A. 2A:31-1, but limits damages to "pecuniary" injuries suffered by the survivors, N.J.S.A. 2A:31-5.  Thus, under the WDA, survivors may only recover economic losses.  *See Beim v. Hulfish*, 216 N.J. 484, 501–04 (2014).  A wrongful death action under the WDA is a derivative action brought by survivors who seek compensation for the pecuniary losses they suffered as a result of the tortious conduct of

---

[2] Both parties agree that the insurance contract at issue is an individual plan and therefore, not governed by ERISA.  (Doc. No. 54 at 16; Doc. No. 56 at 7).

4

another.   Such actions differ from a survival action under the New Jersey Survivor's Act,

N.J.S.A. 2A:15-3, which preserves to the decedent's representatives a tort cause of action that

the decedent would have had if he or she had survived.  *See Smith v. Whitaker*, 160 N.J. 221,

230–34 (1999).  The Survivor's Act does not explicitly limit recoverable damages.  *See* N.J.S.A.

2A:15-3.

  "The role of the Court in statutory interpretation is to determine and effectuate the

Legislature's intent," by "look[ing] first to the plain language of the statute."  *Marino v. Marino*,

200 N.J. 315, 329 (2009) (citations omitted).  Courts will not "rewrite a plainly-written

enactment of the Legislature [nor] presume that the Legislature intended something other than

that expressed by way of the plain language."  *Id.*  Only if the plain language of a statute is

unclear or susceptible to multiple meanings may a court look to extrinsic secondary evidence.

*See id.*  Additionally, "[t]he preamble . . . should be read in harmony with the statute that it

introduces, whenever possible."  *DiProspero v. Penn*, 183 N.J. 477, 496 (2005) (citations

omitted).  "To the extent that the preamble is at variance with the clear and unambiguous

language of the statute, the preamble must give way."  *Id.* at 497.

  Plaintiff asserts that the plain language and purpose of the HCCAA permit her to present

proof of non-economic damages at trial.  The operative provision of the HCCAA explicitly states

that "carriers . . . shall be liable to a covered person for economic and non-economic loss."

N.J.S.A. 2A:53A-33(a).  Therefore, Plaintiff argues that she may seek non-economic damages at

trial.  Moreover, to the extent that other statutes may conflict with the HCCAA, Plaintiff claims

that the HCCAA supersedes any contrary provision because it begins with the phrase

"[n]otwithstanding the provisions of any other law to the contrary."  *Id.*  In addition to this

explicit statutory command, Plaintiff asserts two other reasons why the HCCAA is not

constrained by any potential damages limits in the WDA and Survivor's Act.  First, the HCCAA was enacted more recently than both the WDA and Survivor's Act; thus, to the extent there is any conflict among the statutes, the HCCAA prevails.[3]  Second, the HCCAA more specifically applies to the facts at hand than the WDA and Survivor's Act, which are general tort statutes.[4] Therefore, to the extent there is any conflict among the statutes, Plaintiff argues that the HCCAA supersedes the WDA and Survivor's Act and permits proof of non-economic damages.

In addition to the plain language of the statute, Plaintiff asserts that the purpose of the HCCAA also supports a broad remedy that includes non-economic damages. The HCCAA was enacted because:

> Health and dental carriers, in particular health maintenance organizations and other managed care entities, have become increasingly involved in health care treatment decisions, including, but not limited to, the use of financial incentives to providers and practice guidelines, in an effort to reduce health care costs;
>
> As a result, many carriers have been reducing or denying medically necessary health care treatments for their insured patients;
>
> Since the carriers are in many instances making medical decisions when they deny, delay, or diminish health care treatments, they should be held to the same level of legal responsibility as physicians and other health care providers who make decisions regarding the necessity and appropriateness of medical care; and
>
> It is fair and appropriate that insured patients have the opportunity to dispute carrier or organized delivery system decisions in court, as well as in internal and external appeals procedures so that these disputes may be quickly and efficiently resolved in ways that best accommodate the needs of the insured patient.

---

[3] Plaintiff states that "[w]here a subsequent legislative enactment clearly conflicts with an earlier statute affecting the same subject matter, courts will find the legislative intent to supersede the earlier law," citing *Kemp v. State*, 147 N.J. 294, 306–07 (1997), among other cases.  (Doc. No. 54 at 20-21).

[4] Plaintiff cites the canon of statutory construction that if two statutes seem to be in conflict, and one is more general while the other specific, the conflict is resolved in favor of the more specific statute. (Doc. No. 54 at 23) (citing *In re Salaries for Probation Officers of Hudson Cnty.*, 158 N.J. Super. 363, 366 (App. Div. 1978)).

N.J.S.A. 2A:53A-31.  In light of the clear legislative intent to provide remedies to individuals harmed by the decisions of their health insurers, Plaintiff argues that the HCCAA should be construed liberally in favor of broad remedies, as courts have construed other remedial statutes.[5]

In opposition, Defendants assert that the HCCAA should be interpreted in the context of other similar tort statues such as the WDA and Survivor's Act, and that under this interpretation, non-economic damages are barred in Plaintiff's case.  Since all three statutes address the same subject matter, Defendants argue that the statutes "should be read in *pari materia* and construed together as a unitary and harmonious whole." *Saint Peter's Univ. Hosp. v. Lacy*, 185 N.J. 1, 15 (2005) (citation omitted).   Specifically, Defendants assert that the HCCAA was intended to impose on health insurers the equivalent legal liability that doctors and other health care providers face, citing the HCCAA preamble that states health care carriers "should be held to the same level of legal responsibility as physicians and other health care providers who make decisions regarding the necessity and appropriateness of medical care."  N.J.S.A. 2A:53A-31. Since physicians would only be liable for economic damages under the WDA and economic and non-economic damages under the Survivor's Act, Defendants argue that insurance companies' liabilities under the HCCAA should be similarly construed.[6]  To allow economic and non-economic damages in all cases under the HCCAA, Defendants' assert, would produce an

---

[5] Plaintiff cites the following: *Hous. and Redev. Auth. of Twp. of Franklin v. Miller*, 397 N.J. Super. 1, 5 (App. Div. 2007) (stating that broad, sweeping remedial statutes should be construed liberally to accomplish the legislature's beneficent purposes); *Jefferson Loan Co., Inc. v. Session, 397 N.J. Super*. 520, 533–34 (App. Div. 2008) (construing the Consumer Fraud Act liberally in consumers' favor).

[6] In other words, Defendants seemingly assert that the HCCAA is not a standalone statute. Whether a plaintiff suing under the HCCAA could seek economic damages only or both economic and non-economic damages would depend on whether the plaintiff is also asserting claims under the WDA or Survivor's Act.  Here, Plaintiff has asserted claims under both the WDA and Survivor's Act, (Doc. No. 34 at 21), thus it is unclear why Defendants assert that non-economic damages are barred in this case.

unreasonable result—the singling out of insurance carriers for increased damages that no other group of defendants face.

Defendants' interpretation of the HCCAA contradicts the plain language of the statute, which explicitly and unambiguously permits covered persons to seek both economic and non-economic damages against health care carriers.  There is no reference in the HCCAA to the WDA or Survivor's Act.  Instead, the Act's language specifically commands courts to give the HCCAA precedence over other statutes by imposing liability "notwithstanding the provisions of any other law to the contrary."  N.J.S.A. 2A:53A-33(a).  In light of the HCCAA's clear statutory language, courts cannot "rewrite a plainly-written enactment of the Legislature [nor] presume that the Legislature intended something other than that expressed by way of the plain language." *Marino v. Marino*, 200 N.J. 315, 329 (2009) (citations omitted).

In addition, to the extent that there is any conflict between the HCCAA's operative, liability-imposing provision and the statute's statement of purpose (that carriers "should be held to the same level of legal responsibility as physicians"), the operative provision prevails.  *See DiProspero v. Penn*, 183 N.J. 477, 497 (2005) ("To the extent that the preamble is at variance with the clear and unambiguous language of the statute, the preamble must give way.").  Finally, reading the HCCAA to consistently permit economic and non-economic damages does not produce unreasonable results nor conflict with other statutes such as the WDA and Survivor's Act.  Each of these statutes was enacted for a separate purpose and intended to provide remedies to plaintiffs facing different circumstances.[7]  The fact that there may be disparities between insurance carriers and doctors or other health care providers in the amount of damages each

---

[7] Both parties' briefs address the historical context and purposes of these acts.  (Doc. No. 54; Doc. No. 56; Doc. No. 57).

group faces is not unreasonable.  As Plaintiffs discussed in their brief, many remedial statutes single out a group of defendants for exposure to damages that no other group faces.[8]  It is within the legislature's discretion to establish specific remedies for certain violations, and when the legislature chooses to do so, courts should abide by such statutory commands.  *See U.S. v. Ware*, 161 F.3d 414, 424 (6th Cir. 1998) ("Generally when Congress has designated a specific remedy for violation of one of its acts, courts should presume that Congress has engaged in the necessary balancing of interests to determine the appropriate penalty.") (citations omitted); *U.S. v. Frazin*, 780 F.2d 1461, 1466 (9th Cir. 1986) ("Where Congress has both established a right and provided exclusive remedies for its violation, [courts] would not encroach upon the prerogatives of Congress . . . .").

## CONCLUSION

For the reasons set forth above, Plaintiff's Motion in Limine will be granted.

/s/ Anne E. Thompson
ANNE E. THOMPSON, U.S.D.J.

---

[8] For example, the Conscientious Employee Protection Act, N.J.S.A. 34:19-1, singles out employers who retaliate against whistleblowers for damages that no other group faces; the Consumer Fraud Act, N.J.S.A. 56:8-1, singles out persons committing an unconscionable commercial practice for damages that no other group of defendants face.  (*See* Doc. No. 57 at 10-11).